NOT FOR PUBLICATION                                    (Docket No. 51)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                          :
ACTEGA KELSTAR, INC.,                     :
                                          :
                    Plaintiff,            :        Civil No. 09-1255 (RBK/JS)
                                          :
            v.                            :        **OPINION**
                                          :
JAMES ROSS MUSSELWHITE,                   :
                                          :
                    Defendant.            :
_____    :

**KUGLER**, United States District Judge:

This matter arises out of an employment dispute between Plaintiff Actega Kelstar and

Defendant James Ross Musselwhite, a former employee of Kelstar.  Among other things, the

parties dispute whether Musselwhite violated a non-compete/non-solicitation agreement (NCA).

Presently before the Court is Musselwhite's Motion for Declaratory Judgment and Injunctive

Relief (Docket No. 51).  He seeks a declaration that Georgia law applies to this action, seeks a

declaration that the NCA is unenforceable, and seeks to enjoin Kelstar from enforcing the NCA.

For the following reasons, the Court denies the Motion in all respects.

## I.      BACKGROUND

This is the third motion before the Court in this matter; see Actega Kelstar, Inc. v.

Musselwhite, No. 09-1255, 2009 WL 2168866 (D.N.J. July 17, 2009); Actega Kelstar, Inc. v.

Musselwhite, No. 09-1255, 2009 WL 1794793 (D.N.J. June 22, 2009), and thus the facts below

are limited to the disposition of the present Motion.

Kelstar is a manufacturer of specialty coatings and chemicals for the graphics arts industry, and one of the largest suppliers of coatings in North America. Musselwhite is a citizen and resident of Georgia and a former salesperson for Kelstar. He began employment with Kelstar's predecessor, Kelstar International Enterprises, Inc. (KIE), in December 2000 as a technical sales representative. Musselwhite's most recent position with Kelstar was as a regional sales manager for the southeast region of the United States. His responsibilities included servicing customers in Georgia, Florida, Alabama, and Tennessee, as well as supervising another salesman who covered Virginia and the Carolinas.

At the outset of his employment with KIE, Musselwhite entered into an employment agreement, which provided for compensation and benefits. The agreement specifically stated that KIE wished to employ Musselwhite "as a Technical Sales Representative in the [sic] Georgia and certain other areas of the Southeastern United Stated [sic] marketplace . . . ." Kelstar br., Ex. A at 1. The agreement also provided that Musselwhite would be exposed to confidential information as a result of his employment. Thus, the agreement contained restrictive covenants, including a non-disclosure provision and a NCA. It also contained a choice-of-law provision, selecting New Jersey as the operative law. After Kelstar acquired KIE, Musselwhite and Kelstar entered into an amended agreement specifically incorporating the restrictive covenants in the original agreement.

As is relevant here, the NCA states that Musselwhite shall not "enter into the employ of, or render any services to, any person, firm or corporation engaged in the manufacture or sale of technologies not readily available to the public or prevalent throughout the industry which are

2

manufactured or sold by the [Kelstar], or any of its subsidiaries or affiliates . . . ."  Kelstar br.,

Ex. A at § 6.2(b)(1)(A).  The NCA's geographic scope includes "all areas served by [Kelstar] or

its subsidiaries or affiliates."  Id. at § 6.2(b)(2).  Kelstar's "affiliates" appears to include

companies across the United States and the globe, including Actega Radcure (U.S.), Actega

Canada, Actega Terra (Germany), Actega Rhenania (Germany), Actega DS (Germany), Actega

Rhenocote (France), Actega Artistica (Spain), and Actega Foshan (China).  Musselwhite certif. at

¶ 20.  The NCA's restrictions apply for a two year period.

## II.      DISCUSSION

On August 12, 2009, Defendant Musselwhite filed a Motion for Declaratory Judgment

and Injunctive Relief.  Musselwhite seeks a declaration that the NCA in the employment

agreement is unenforceable under Georgia law.  Alternatively, Musselwhite seeks a declaration

that the NCA is unenforceable under New Jersey law and a declaration that it cannot be

modified.  Under either law, he seeks to enjoin Kelstar from enforcing the NCA.  Kelstar

responds that New Jersey law should govern the dispute, and that under New Jersey law,

Musselwhite has not shown that he is entitled to injunctive relief.  The Court agrees with

Kelstar's positions, but does not reach the question of whether the NCA is enforceable.

### A.      Choice of Law

The first inquiry here is a basic choice of law question.  Unfortunately neither

Musselwhite nor Kelstar adequately applies the appropriate test to answer this question, and thus

the Court is left to do much of the legal heavy lifting.  It is in this context that the Court finds

New Jersey rather than Georgia law governs this dispute.

Even though the parties have contractually agreed to use New Jersey law, their choice

does not guarantee that New Jersey law governs.  See Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 506 A.2d 817, 820-21 (N.J. Super. Ct. App. Div. 1986).  In fact, New Jersey courts rely upon the Restatement (Second) of the Conflicts of Laws § 187 (1971) in determining whether to enforce a choice of law provision.  Kalman Floor Co. v. Joseph L. Muscarelle, Inc., 481 A.2d 553, 555 (N.J. Super. Ct. App. Div. 1984), aff'd, 486 A.2d 334 (N.J. 1985); Winer, 506 A.2d at 820-21.  As is relevant here, a choice of law provision will be applied unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188,[1] would be the state of the

---

[1] Restatement (Second) of Conflicts of Laws § 188 (1971) states:
(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflicts of Laws § 187(2); Kalman Floor, 481 A.2d at 556 (citing § 187).  For purposes of the present dispute, only subsection b is invoked.

Under subsection b, this Court must find the following three things in order to apply Georgia law: 1) that the application of New Jersey law would be contrary to a fundamental policy of Georgia; 2) that Georgia law has a materially greater interest than New Jersey in the determination of the particular issue; and (3) that under the general choice of law factors in § 188, Georgia law applies.  See Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd., 847 F. Supp. 1244, 1248 (D.N.J. 1994) (Gerry, J.).

Applying this three-part test, the Court is compelled to find that New Jersey law governs. First, application of New Jersey law is not contrary to Georgia fundamental policy because the two laws are substantially the same.  In Georgia, public policy prevents contracts in restraint of trade.  See Hostetler v. Answerthink, Inc., 599 S.E.2d 271, 274 (Ga. Ct. App. 2004).  However, unlike what Musselwhite's brief seems to at times infer, Georgia law does not equate all NCA's with prohibited restraints.  See id.  Instead, a NCA will be enforced if "(1) the restraint [on trade] is reasonable; (2) founded upon valuable consideration; (3) is reasonably necessary to protect the party in whose favor it is imposed; and (4) does not unduly prejudice the interests of the public." Id.; Musselwhite br. at 8.  Similarly, a NCA will be upheld in New Jersey provided it is "reasonable," which requires that "[1] it simply protects the legitimate interests of the employer, [2] imposes no undue hardship on the employee, and [3] is not injurious to the public."  Solari Indus., Inc. v. Malady, 264 A.2d 53, 56 (N.J. 1970).  Given that each state's laws are at bottom based upon a rule of reasonableness, they can hardly be said to be at odds; i.e., applying New

Jersey law does not violate a fundamental policy of Georgia.

Perhaps the only meaningful difference between Georgia and New Jersey NCA law is that New Jersey allows modification ("blue penciling") of a prohibited provision, while Georgia does not. Compare Solari, 264 A.2d at 57, with Keener v. Convergys Corp., 342 F.3d 1264, 1268 (11th Cir. 2003). However, that difference is not meaningful here as the ability to modify an offending NCA does not rise to the level of "fundamental" policy. See BABN Techs. Corp. v. Bruno, No. 98-3409, 1998 WL 720171, at *12 (E.D. Pa. Sept. 2, 1998) (adopted magistrate report and recommendation applying Pennsylvania rather than Georgia law to NCA, finding Georgia's policy toward blue penciling is not a fundamental policy). Both New Jersey and Georgia oppose unreasonable restraints on trade and limit an employer's ability to control an employee's post-employment conduct. The difference between the two states' laws is a matter of mere degrees, not a matter of polar difference.[2] Thus, applying New Jersey law does not offend a fundamental policy of Georgia.

Second, Musselwhite has not shown that Georgia has a "materially greater" interest in resolving the particular issue of the NCA's enforceability. "Materially greater" is perhaps not capable of precise definition, but it seems to include the number of contacts with the other state and the policy behind the law at issue. See TransPerfect Translations, Inc. v. Leslie, 594 F. Supp. 2d 742, 751 (S.D. Tex. 2009) (finding Texas had materially greater interest in dispute than

---

[2] Moreover, New Jersey courts do not permit blue penciling as a matter of right, rather courts look at whether the employer overreached in obtaining the NCA in the first place. See Solari, 264 A.2d at 56 ("When an employer, through superior bargaining power, extracts a deliberately unreasonable and oppressive covenant he is no just position to seek, and should not receive, equitable relief from the courts."). In such instances, a NCA will neither be enforced nor modified. See id.

Georgia); see also Newcomb, 847 F. Supp. at 1249-50 (finding New Jersey had materially greater interest in dispute than Pennsylvania).  In this dispute, the quantity and quality of contacts with each state is unclear.  The contract is between a citizen of New Jersey (Kelstar) and a citizen of Georgia (Musselwhite), who was a citizen of Georgia at the time of contracting.  The contract calls for Musselwhite to perform in Georgia, but it also calls for him to perform in Florida, Alabama, Tennessee, Virginia, North Carolina, and South Carolina.  On balance, it seems as if there are more contacts with Georgia than New Jersey; however, as the underlying contract involves a New Jersey citizen/business, the Court must look at this state's policies.  New Jersey has an interest in ensuring that contracts entered into by its citizens are "fully complied with and enforced."  See Salem Steel N. Am., LLC, v. Shanghai Shangshang Stainless Steel Pipe Co., No. 08-4827, 2009 WL 1652395, at *5 (D.N.J. June 11, 2009); Hudson Marine Mgmt. Servs., Inc. v. Thomas Miller (Miami) Inc., No. 05-5197, 2006 WL 1995131, at *3 (D.N.J. July 14, 2006). This means that New Jersey has an interest in determining whether Kelstar's contract was breached.  Further, while no doubt Georgia also has an interest in protecting its citizens from oppressive NCA's, New Jersey has a similar policy.  Therefore, on the whole, although Georgia may have perhaps *some* greater interest in resolving this dispute, it cannot be said to have a *materially* greater interest.

    Third and finally, Musselwhite has not shown that Georgia law would apply in the absence of an effective choice of law provision.  On the record as presented, it is unclear where the contract was made, negotiated, or performed.  See Restatement (Second) of Conflicts of Laws § 188(2).  While clearly some of the contract was performed in Georgia, it is equally clear that some of the contract was performed in a number of other states in the southeast, and perhaps

7

somewhat in New Jersey.  Further, Musselwhite has not shown how the balance of factors in §

188 and § 6 of the Restatement (e.g., the location of the subject matter of the contract, the

parties' domicile/place of business, the protection of justified expectations) demonstrate that

Georgia law would otherwise apply.  Therefore, in light of this factor and those above, Georgia

law does not apply to this dispute.

### B.      Declaratory Relief under New Jersey Law

Having determined that New Jersey law and not Georgia law applies to the present

dispute, the analysis should turn to whether the NCA violates New Jersey law, and if so, whether

it can be blue penciled.  However, on the record as presented, the Court cannot answer these

questions.

What Musselwhite has really presented to the Court is a wolf in sheep's clothing: a

motion for summary judgment disguised as a motion for declaratory relief.  Musselwhite really

asks that he be declared the winner of the central dispute, i.e., whether he breached the NCA.  In

support of this proposal, Musselwhite presents a mere two pages of briefing dedicated to

explaining why the NCA is unenforceable under New Jersey law, and citing to a single case in

support.  See Musselwhite br. at 13-15 (citing Platinum Mgmt., Inc. v. Dahms, 285 N.J. Super.

274, 293-94 (Law. Div. 1995)).  Musselwhite does add additional briefing to explain why this

Court should not blue pencil the agreement, his "in terrorem" argument, but cites to no law in

support.  See id. at 15-16.  Kelstar, in turn, seems to have been caught unawares that the present

Motion in effect posed the ultimate question of the case, as it briefed the enforceability of the

NCA in the context of whether Musselwhite could show a likelihood of success on the merits.

See Kelstar br. at 10-14.  In other words, Kelstar seemingly understood Musselwhite's Motion as

posing a limited inquiry on the merits, not as posing a final inquiry on the ultimate question.  See Kelstar br. at 10-14.

Looking at the pending Motion for what it really is – a motion for summary judgment – the Court simply lacks sufficient information to decide whether the NCA is enforceable under New Jersey law, and if not, whether it should be blue penciled.  The Court lacks a statement of undisputed material facts from each side explaining exactly what is, and what is not, in dispute vis-a-vis the NCA.  See L. Civ. R. 56.1.  The Court lacks a clear statement from the parties explaining precisely how each part of the NCA should be interpreted (i.e., what each provision means), what case law supports their position that the NCA is or is not reasonable, and how the facts and law entitle them to judgment as a matter of law or show a genuine issue of material fact.  See Fed. R. Civ. P. 56.  In summary, the Court cannot be called upon to decide the ultimate question of this action without a full record and recitation of the applicable law.

Therefore, the Court will deny the Motion for Declaratory Judgment with respect to declaring the NCA unenforceable under New Jersey law.  Musselwhite is granted leave to file a motion for summary judgment on or before March 31, 2010, per the schedule set forth in the Amended Scheduling Order.  See Docket No. 59.  Any summary judgment motion filed should explain precisely what Musselwhite believes the NCA does and does not cover, and should set forth case law supporting why its scope is unenforceable under New Jersey law.

### C.    Injunctive Relief

Because the Court otherwise denies Musselwhite's Motion to declare the NCA unenforceable under New Jersey law, the Court denies his Motion for Injunctive Relief.

### D.     Breach

As a final matter, Musselwhite argues that Kelstar cannot enforce the NCA because it first breached the employment agreement.  <u>See</u> Musselwhite br. at 19-20.  A breach of a material term of an agreement relieves the non-breaching party of its obligations under the agreement. <u>Nolan by Nolan v. Lee Ho</u>, 577 A.2d 143, 146 (N.J. 1990).  Here Musselwhite alleges that Kelstar breached the employment agreement by, among other things, not paying commissions and/or improperly calculating commissions.  <u>See</u> Musselwhite br. at 20.  Kelstar flatly disputes these assertions.  <u>See</u> Kelstar br. at 15-17.  Regardless, despite referencing statements by Kelstar President Uri Stotle in a deposition, Musselwhite supplied no factual record in support of his argument.  Therefore, without deciding whether any breach by Kelstar relieves Musselwhite of his duty to perform, the Court denies Musselwhite's Motion.

## III.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion for Declaratory Relief to the extent that it seeks a declaration that Georgia law governs this dispute.  The Court **DENIES** the Motion for Declaratory Relief to the extent that it seeks a declaration that the NCA is unenforceable under New Jersey Law.  The Court further **DENIES** Musselwhite's Motion for Injunctive Relief.  An accompanying Order shall follow.


Date:   3-2-10                                              /s/ Robert B. Kugler
                                                   ROBERT B. KUGLER
                                                   United States District Judge